IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHRISTOPHER M. JONES,<br><br>    Plaintiff<br><br>    v.<br><br>THE CITY OF COLLEGE PARK,<br>GEORGIA, a municipal corporation,<br>et al.,<br><br>    Defendants. | CIVIL CASE NO.<br>1:05-CV-1797-WBH |

## O R D E R

Plaintiff Christopher M. Jones was a contract employee of Defendant City of College Park, Georgia ("the City"). Defendants Tracey Wyatt, Charles E. Phillips, Sr., and Cynthia L. Jones were members of the four-person College Park City Council who voted not to renew Plaintiff's employment contract. Plaintiff sued, alleging that the City did not renew his contract because he is white. The case went to trial, and the jury found the City, Wyatt, and Phillips liable. The matter is currently before the Court on Plaintiff's motions for equitable relief [Doc. 232], for leave to supplement his motion for equitable relief [Doc. 244], and for attorneys' fees [Doc. 250]. Also before the Court are Defendants' motions for judgment as a matter of law [Doc. 236] and to strike Plaintiff's reply memorandum in support of his motion for attorneys' fees [Doc. 258].

For the reasons discussed below, Defendants' motion for judgment as a matter of law [Doc. 236] is **GRANTED in part** and **DENIED in part**. Plaintiff's motion for equitable relief [Doc. 232] is **DENIED**. Plaintiff's motion for leave to supplement his motion for equitable relief [Doc. 244] is **DENIED as moot**. Plaintiff's motion for attorneys' fees [Doc. 250] is **GRANTED** but for an amount less than sought. Defendants' motion to strike [Doc. 258] is **DENIED** as moot.

I.   Background

Christopher Jones began working for College Park in 1998. He was the Director of Commercial and Industrial Development in 2004 when the City Council voted 3-1 not to renew his employment contract. (Tr. 115, 125.). Believing that he had been terminated because he is white, Jones brought this action against the City of College Park and the three City Council members who voted not to renew his contract. Plaintiff alleged that City Council members Tracey Wyatt, Charles Phillips, and Cynthia Jones violated 42 U.S.C. §§ 1981 and 1983 when they voted not to renew Plaintiff's employment contract because of his race.[1] Plaintiff also alleged that the City

---

[1] Plaintiff also brought a claim pursuant to 42 U.S.C. § 1985(3), which the Court dismissed in its Order on Defendants' motion for summary judgment. (Order, Sept. 28, 2007 [Doc. 135].)

was liable under §§ 1981 and 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., for not renewing his contract because of his race.  Defendants countered that they voted not to renew Plaintiff's employment contract because he overstepped his authority, was disrespectful, and failed to establish or maintain effective working relationships.

After a four-day trial, a jury found that the City of College Park and City Council members Wyatt and Phillips acted with racial animus and thus were liable to Plaintiff for failing to renew his contract.  (Special Interrogs., Sept. 4, 2009 [Docs. 225-27] (finding that "Plaintiff's race was a substantial or motivating factor that prompted the Defendant to [decide not to renew Plaintiff's contract]" and that Plaintiff would not "have been discharged from employment for other reasons even in the absence of consideration of [his] race").)  The jury found that Cynthia Jones, the third City Council defendant who voted against renewing Plaintiff's contract, did not act based on race and therefore had no liability.  (Special Interrog., Sept. 4, 2009 [Doc. 228].)  The jury awarded Plaintiff $156,000 in damages: $6,000 in compensatory damages against the City, $75,000 in punitive damages against Wyatt, and $75,000 in punitive damages against Phillips.  (Special Interrogs., Sept. 4, 2009 [Docs. 225-27].)

Presently before the Court are the parties' post-trial motions. Defendants move for judgment as a matter of law on all of Plaintiff's claims. Plaintiff, in turn, requests reinstatement, or in the alternative, front pay; certain injunctive relief; a declaration that his civil rights were violated; and an award of attorneys' fees under Title VII and 42 U.S.C. § 1988.

## II.   Analysis

### A.   Defendants' Rule 50(b) Motions

Defendants move for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure.  The City of College Park contends that it cannot be liable under Title VII or § 1981 because there is no evidence that a majority of the City Council's members voted not to renew Plaintiff's contract because of his race.  Wyatt and Phillips argue that they are entitled to judgment as a matter of law because Plaintiff failed to establish that they violated his statutory rights and because qualified immunity shields them from liability.

"[I]n ruling on a party's renewed motion under Rule 50(b) after the jury has rendered a verdict, a court's sole consideration of the jury verdict is to assess whether that verdict is supported by sufficient evidence." Id.; accord Optimum Techs. Inc. v. Henkel Consumer Adhesives, Inc., 496 F.3d 1231,

1251 (11th Cir. 2007); Chaney v. City of Orlando, 483 F.3d 1221, 1227 (11th Cir. 2007).  In its analysis, the Court must consider all the evidence in the record and draw all reasonable factual inferences in favor of the nonmoving party.  Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1192-93 (11th Cir. 2004).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  Id. at 1193 (citation omitted).  Therefore, "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000).

### 1.   The City of College Park's Rule 50(b) Motion

The City contends that it is entitled to judgment as a matter of law because the evidence presented at trial did not show that *all three* of the City Council members who voted to terminate Plaintiff did so because of his race.  It argues that because only two of the four City Council members — constituting less than a majority of the City Council — voted against renewing Plaintiff's contract because of his race, the City Council did not ratify the unconstitutional intent.  Therefore, the unconstitutional intent never became city policy, and the City may not be held liable.

Plaintiff contends that because Wyatt's and Phillips's discriminatory votes were sufficient to effect the non-renewal of Plaintiff's employment contract, their unlawful conduct "constituted an unlawful municipal policy, and the City is liable for their conduct."  He notes the dearth of Eleventh Circuit guidance given such facts:  in all of the Eleventh Circuit cases Defendants cite, the discriminatory vote against the plaintiff was <u>not</u> the but-for cause of the plaintiff's injury; in those cases, only one member of the council or panel was found to have committed discrimination, and the vote was not determinative.  Consequently, Plaintiff urges the Court to adopt the Sixth Circuit's "but-for" standard, which provides that municipal liability may be imposed when a plaintiff's appointment would not have been precluded but for the votes of unlawfully motivated council members.  <u>See, e.g.</u>, <u>Scarbrough v. Morgan County Bd. of Educ.</u>, 470 F.3d 250, 262-63 (6th Cir. 2006).

Plaintiff is correct that Defendants cite no Eleventh Circuit cases in which discriminatory votes alone were sufficient to effect a city council's adverse action against a plaintiff but were insufficient to impute intent—and therefore liability—to the city itself.  Neither has the Court's research revealed any such precedent.  Nevertheless, the Court is compelled to apply the legal standard set out in the municipal liability cases the Eleventh Circuit has considered and will not import the law of a foreign jurisdiction.

Pursuant to the legal standard set out in this circuit, for the City to be liable, a majority of the four-person council must have been motivated by Plaintiff's race when they decided to terminate him.  See Matthews v. Columbia County, 294 F.3d 1294, 1297 (11th Cir. 2002) (per curiam) (holding that "[b]ecause policymaking authority rests with the [council] as an entity," liability may not attach unless the council "ratif[ies] not only the decision itself, but also the unconstitutional basis for it") (citation omitted); Mason v. Village of El Portal, 240 F.3d 1337, 1339 (11th Cir. 2001) ("[T]here can be no municipal liability unless all three members of the [five-person] council who voted against reappointing Plaintiff shared the illegal motive."); Collier v. Clayton County Cmty. Serv. Bd., 236 F. Supp. 2d 1345, 1373-74 (N.D. Ga. 2002) (applying the standard to both § 1983 and Title VII cases).

In the instant case, although a majority of the City Council made the official decision not to renew Plaintiff's contract, the jury found that only two of the City Council members—Wyatt and Phillips—had a discriminatory motive, and that Cynthia Jones did not.  Because two members do not constitute a majority of the four-person City Council, pursuant to the legal standard set out in Eleventh Circuit case law, the City Council did not "ratify" the discriminatory motive.  Consequently, as a matter of law, the evidence was insufficient for the jury to impute discriminatory intent to the

College Park City Council as a whole. Therefore, the City may not be held liable for Plaintiff's injury, and the Court **GRANTS** the City's Rule 50 motion.

### 2. Wyatt and Phillips' Rule 50(b) Motion

#### a. Causation Challenge

Defendants Wyatt and Phillips first argue that they are entitled to judgment as a matter of law because their two votes were insufficient to effect the decision not to renew Plaintiff's employment contract with the City of College Park, and therefore "they do not constitute an adverse employment action violative of Plaintiff's statutory rights." On the contrary, the evidence in the trial record is sufficient to support the jury's verdict finding that Wyatt and Phillips caused Plaintiff's injury and consequently are liable.

As Plaintiff aptly argues, the evidence supports the conclusion that but for Wyatt's and Phillips's discriminatory votes, the City Council would have renewed Plaintiff's contract. Only one City Council member voted to renew Plaintiff's contract. Even though the jury found Cynthia Jones's vote not to be discriminatory, Plaintiff still would have lost his contract by a two-to-one margin (Wyatt's and Phillips's discriminatory votes versus one vote for renewal) due to Wyatt's and Phillips's racial animus. Alternatively, if the jury considered only the non-discriminatory votes, Cynthia Jones's vote not to renew Plaintiff's contract would have tied with the vote to renew his contract;

at that point the mayor would have been called upon to break the tie, and the trial record contains testimony sufficient for the jury to have found that the mayor would have voted to renew Plaintiff's contract. (Trial Tr. at 417:8-14, 419:10, 422:18-20 (mayor's testimony stating that he believed Plaintiff had done a good job).) Consequently, the evidence is sufficient to support a jury finding that Wyatt's and Phillips's unconstitutional votes caused Plaintiff's contract not to be renewed. As a result, Defendants' motion will not be granted on these grounds.

### b.     Clearly Established Rights

Wyatt and Phillips next argue that they are entitled to judgment as a matter of law on their qualified immunity defense because a reasonable city council member in 2004 could have believed that it was lawful for a party's race be a substantial or motivating factor when deciding not to renew his contract. A public official is entitled to qualified immunity on claims brought against him in his individual capacity unless his conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The right allegedly violated must be clearly established in a particularized sense: "the contours of

the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Plaintiff's right to be free from having his race be a substantial or motivating factor in the decision to terminate him was clearly established when Defendants voted not to renew his contract. See Alexander v. Fulton County, 207 F.3d 1303, 1321 (11th Cir. 2000) ("[T]here can be no doubt that . . . it was clearly established that intentional discrimination in the workplace on account of race violated federal law."), overruled on other grounds; Smith v. Lomax, 45 F.3d 402, 407 (11th Cir. 1995) (finding it "obvious that a reasonable commissioner would have known that his or her vote to replace an employee on account of race" was outside the protection of qualified immunity). At trial, Plaintiff presented significant evidence that Wyatt and Phillips voted not to renew his contract because of Plaintiff's race. (See, e.g., Trial Tr. 88:10-19 (city finance director's testimony that Wyatt told her he had a "black agenda" and threatening to fire her if she didn't hire "more Blacks"; 133:14-20 (Plaintiff's testimony that Phillips told him "I couldn't let them see a White department head appear to be running the show at City Hall."); 135:11-14 (Plaintiff's testimony that Wyatt said to him, "I don't understand how a White development director can relate and do a job in a

city that is predominantly Black."); 314:14-18 (merchants association past president's testimony that Phillips mentioned he wanted to replace Plaintiff with an African-American)). The proffered evidence was sufficient to support the jury's verdict. Accordingly, the Court **DENIES** Defendants Wyatt and Phillips's Rule 50 motion for judgment as a matter of law.

### B. Equitable Relief

In addition to the jury's award of damages, Plaintiff seeks additional equitable relief. He requests (1) "[a] declaration that his rights under Title VII and 42 U.S.C. § 1981 were violated"; (2) an injunction requiring College Park to adopt certain anti-discrimination employment policies and to engage a third party to implement an anti-discrimination training program; (3) an order requiring College Park to reinstate Plaintiff to his previous position of Director of Commercial and Industrial Development and enjoining Defendants from engaging in any retaliatory acts against him; and (4) an award of front pay, should the Court decline to order reinstatement.

### 1. Declaratory Judgment

Plaintiff contends that a declaratory judgment is necessary in this case because Defendants have never acknowledged any wrongdoing. Plaintiff has

not pointed the Court to any legal authority supporting his claim that he is entitled to a declaratory judgment. Indeed, the only authority Plaintiff provided in support of his request was <u>Landgraf v. USI Film Products</u>, 968 F.2d 427, 431-32 (5th Cir. 1992), in which the United States Court of Appeals for the Fifth Circuit found that a declaratory judgment was <u>not</u> an appropriate remedy for the Title VII claimant. Moreover, the Court has already resolved Plaintiff's claims against the City of College Park on the City's motion for judgment as a matter of law, and it will enter judgment on the jury's verdict with regard to Plaintiff's claims against the individual defendants. Therefore, Plaintiff's motion for a declaratory judgment is superfluous, and the Court **DENIES** it.

### 2.     Remaining Requests for Injunctive Relief

The remainder of Plaintiff's requests for injunctive relief are predicated on wrongdoing attributable to the City of College Park. As discussed above in § II.A.1., the City cannot be deemed liable to Plaintiff because the City Counsel did not ratify Wyatt's and Phillips's racial animus. If the City is not liable, there is no basis upon which to order equitable relief against it. Accordingly, the Court **DENIES** Plaintiff's motions for equitable relief against

the City and **DENIES as moot** Plaintiff's motion to supplement his motion for equitable relief.

   C.   Attorneys' Fees

Plaintiff also asks the Court to award him attorneys' fees and costs of litigation in the amount of $648,874.25.  Federal law permits the Court, in its discretion, to award reasonable attorneys' fees to the prevailing party in §§ 1981 and 1983 cases.[2]  See 42 U.S.C. § 1988(b).  In fact, a prevailing party "'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'"  Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (citation omitted).  Additionally, "all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under § 1988."  Am. Civil Liberties Union v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999) (citation omitted).

"The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate."  Blum v. Stenson, 465 U.S. 886,

---

[2]Because Plaintiff did not prevail on his Title VII claim against the City, the Court need not address his request for attorneys' fees pursuant to that statute.  See 42 U.S.C. § 2000e-5(k) (allowing courts the discretion to award a reasonable attorneys' fee to the prevailing party in an equal opportunity enforcement action).

888 (1984). That "lodestar" estimate may then be adjusted as appropriate to the case. Id. The onus is on the party seeking the award to submit evidence of the reasonableness of the hours worked and the rates claimed. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).

When the claimed time is not adequately documented, the court may reduce the fee award accordingly. Id. at 433. "[H]ours that are excessive, redundant, or otherwise unnecessary" should be excluded from the fee request. Id. at 434. Fee applicants are expected to use billing judgment; hours that are not properly billable to one's client may not be billed to one's adversary. Id.

Once the appropriate amount under the lodestar is determined, this Court may further adjust the fee award on the basis of facts of the case. Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974) (abrogated on other grounds Blanchard v. Bergeron, 489 U.S. 87, 94 (1989)). Under Johnson, this Court must consider the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Johnson, 488 F.2d at 717-19.

Where a plaintiff succeeds on only some claims, fees expended on "discrete and unsuccessful claims" should be deducted. Duckworth v. Whisenant, 97 F.3d 1393, 1397 (11th Cir. 1996). "The district court may attempt to identify certain hours that should be eliminated, or it may simply reduce the award to account for the limited success." Hensley v. Eckerhart, 461 U.S. 424, 436-37 (1983).

Defendants do not argue against Plaintiff's entitlement to an award of costs and attorneys' fees. Rather, Defendants contend that the request is excessive and that the billing statements Plaintiff proffered in support of the request are not sufficiently detailed.

### 1.     Determining the Loadstar Amount

This Court will first determine whether the hours billed were reasonably expended and whether Plaintiff's counsel has properly documented their time. An attorney may make a fee application for many kinds of work done in preparation for trial, including prelitigation work, research, strategy sessions, negotiations, reading mail that is related to the case, enforcing a judgment, and even case-related travel. See Webster Greenthumb Co. v. Fulton County, 112 F. Supp. 2d 1339, 1349-50 (N.D. Ga. 2000) (listing cases that describe the many litigation-oriented activities for

which an attorney may charge under § 1988). Plaintiff, as mentioned above, requests an award of $648,874.25 in fees for 2648.55 hours of work performed by seven attorneys and paralegals in this case. The Court has carefully reviewed Plaintiff's counsels' declarations that the hours on the case were reasonably necessary and the exhaustive accounting of the time spent on various matters related to the case. Virtually all of the hours in the fee request were spent on reasonable, necessary tasks.[3]

However, Plaintiff's counsel spent 30.6 hours — and billed a total of $8,035.50 — in an unsuccessful effort to introduce Bruce Seaman as an expert witness in this case. Likewise, Plaintiff's counsel spent 78.9 hours, representing $20,181.25 in fees, on Plaintiff's unsuccessful post-trial motion for equitable relief. The Court declines to include these amounts in the attorneys' fee award. See Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 789 (1989) (providing that when the plaintiff's claims are based on different facts and legal theories, the court may exclude from the fee award the time expended on the discrete, unsuccessful claims). Moreover, counsel spent 82.3 hours on — and charged $23,271.00 for — activities described as "file review" and the like. These descriptions made it difficult in some instances for the Court to ascertain whether all of the hours were

---

[3] An adjustment for unsuccessful claims is discussed below.

reasonably spent. Therefore, the Court will deduct twenty-five percent from Plaintiff's request for attorneys' fees for line items so identified, a reduction of $5,817.75.

Defendants also point out that Plaintiff did not submit declarations by three of the attorneys whose time is included in the fee request and urges the Court to reduce the fee award by $26,601.01, the amount in the fee request that is associated with those attorneys. The Court finds John Hunt's declaration sufficient to support the reasonableness and necessity of the time attributable to two of the attorneys—Sana S. Ayubi and Theodore Lu. The Court has been unable, however, to locate in the record any support for the reasonableness and necessity of the time billed by Gayle Abramson, and Plaintiff points to none. Consequently, the Court will deduct a third of those fees identified by Defendants, a sum of $8,867.00, accounting for the unsupported fees attributable to Abramson.

### 1. Adjusting the Loadstar Amount

With the deductions noted above, we are left with $605,972.75. This Court will now analyze whether Plaintiff is entitled to recover this entire amount. Plaintiff has asked this court to consider enhancing the loadstar amount in this case because Defendants slowed the resolution of the case

17

with their unsuccessful appeal and "efforts to thwart settlement." Indeed, the Supreme Court has said that a court can enhance the loadstar amount where the case presents "exceptional" circumstances. Perdue v. Kenny A., 130 S. Ct. 1662, 1669 (2010) (providing that an enhancement may be appropriate where there are "superior performance and results"). The Court finds, however, that Plaintiff is not entitled to an enhancement. Plaintiff's counsel were successful on some of the claims they brought against Defendants, but not on all of them, and although Plaintiff received an award from the jury,[4] the Court is not convinced that the award constitutes an "exceptional result." Moreover, the lodestar accounts for the time that counsel for Plaintiff expended on the additional work required to litigate Defendants' appeal and pursue settlement.

Looking now to the facts of the case to determine whether an award of the full lodestar amount would be appropriate considering the factors set forth in the Johnson case cited above, this Court finds that: (1) even though Plaintiff clearly demonstrated at the hearing that Defendant caused significant delay and additional work in this matter, this Court cannot escape

---

[4] The jury first returned a verdict that required the Defendants to pay Plaintiff's attorney's fees. No amount of money was mentioned. After being instructed by the trial court that monetary amounts were required, the jury returned the verdict described on page 3 *supra.*

the conclusion that Plaintiff's counsel was not as efficient as it could have been; (2) the facts of this case were not particularly novel or difficult; (3) this Court has no reason to doubt the skill of Plaintiff's counsel, but there is no indication that this case required unusually skilled lawyers; (4) at least to some degree, the work Plaintiff's counsel performed on this case precluded work on other cases; (5) the customary fee is not relevant; (6) this Court has no information as to whether the fee is fixed or contingent; (7) nothing in the record indicates that there were time limitations imposed by the client or the circumstances; (8) counsel certainly obtained a positive result, but, as is noted above, the result was not exceptional; (9) this Court assumes that the lawyers are able and experienced with a good reputation; (10) this Court has no basis upon which to evaluate the relative "desirability" of the case, but notes that Plaintiff's counsel were likely not entirely motivated by notions of charity and a pursuit of justice for its own sake.

In weighing the <u>Johnson</u> factors and considering (1) the fact that Plaintiff did not prevail in many of his claims, and (2) the fact that this Court is convinced that counsel could have achieved the same result more efficiently, this Court concludes that the adjusted lodestar amount of $605,972.75 should be reduced by fifteen percent for a total award of $515,076.84.

IV.  Conclusion

For the reasons discussed above, Defendants' Motion for Judgment as a Matter of Law [Doc. 236] is **GRANTED in part** and **DENIED in part**.  The Court **VACATES** the jury's award of $6,000.00 to Plaintiff against the City of College Park and **DIRECTS** the Clerk to enter judgment in favor of the City and Cynthia Jones.  Plaintiff's motion for equitable relief [Doc. 232] is **DENIED**.  Plaintiff's motion for attorneys' fees [Doc. 250] is **GRANTED**.  Plaintiff's motion for leave to supplement his motion for equitable relief [Doc. 244] and Defendants' motion to strike Plaintiff's reply in support of his motion for attorneys' fees [Doc. 258] are **DENIED** as moot.  The Court **DIRECTS** the Clerk to enter judgment for Plaintiff in the amount of $75,000 against Tracey Wyatt and in the amount of $75,000 against Charles Phillips, Sr.  Finally, the Court **DIRECTS** the Clerk to enter judgment for Plaintiff for costs and attorneys' fees in the amount of $515,076.84 against Defendants Tracey Wyatt and Charles Phillips, Sr., who are jointly and severally liable for that amount, and **CLOSE** the case.

**SO ORDERED**, this 3rd day of March, 2011.

_____
WILLIS B. HUNT, JR.
SENIOR UNITED STATES DISTRICT JUDGE